## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**(1) BILLY JACK GRAVES,**      §
            §
   **Plaintiff,**       §
            §
**vs.**            §   **NO.** 21-cv-00046-JFH-JFJ
            §
**(1) UNION PACIFIC RAILROAD, a**   §
**foreign limited liability company;**    §   Removed from the District Court
            §   of Mayes County, Oklahoma,
**(2) LLOYD PLYMALE, individually;**   §   Case No CV-2020-31
            §
**(3) KELLY D. SMITH, individually**    §
            §
   **Defendants.**      §
            §

### DEFENDANT UNION PACIFIC RAILROAD'S NOTICE OF REMOVAL

    Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, Defendant Union Pacific

Railroad ("Union Pacific") files this notice to remove the above-captioned action from Mayes

County, Oklahoma, to the United States District Court for the Northern District of Oklahoma

based on the existence of a federal question and diversity jurisdiction. Union Pacific respectfully

shows the Court as follows:

### I.
### BACKGROUND & PROCEDURAL PREREQUISITES

    1.    On April 16, 2020, Plaintiff Billy Jack Graves ("Graves") initiated this action in

the District Court of Mayes County, Oklahoma, by filing a Petition captioned *Billy Jack Graves*

*v. Union Pacific Railroad et al.* The Court designated Graves' action Case No CV-2020-31. On

September 18, 2020, Graves filed his First Amended Petition in Nowata County, Oklahoma

(hereinafter, the "State Court Proceeding").

**NOTICE OF REMOVAL – Page 1**

2.      Defendants were served with a copy of Graves' First Amended Petition on January 4, 2021.[1] Thus, this Notice of Removal is timely filed. 28 U.S.C. § 1446(b).

3.      In Graves' First Amended Petition, he asserts two causes of action (1) a *Burk* tort/discharge in violation of Oklahoma Public Policy as to Union Pacific and (2) Malicious Interference with a Contractual Relationship as to Plymale and Smith. *See generally* Exhibit 1, First Amended Petition.

4.      As explained more fully below, removal is proper for three reasons. First, Graves' *Burk* tort and his malicious interference claims are preempted by the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA") because Graves is a collective bargaining unit employee, and the terms and conditions of his employment—including discipline, termination, and reinstatement— are governed by the grievance procedures in the applicable collective bargaining agreement ("CBA"). Graves' *Burk* tort claim is also preempted by the Federal Railroad Safety Act ("FRSA"). Graves' claims are also removable because the parties are diverse and the amount in controversy exceeds $75,000; Graves fraudulently and improperly joined Defendants Plymale and Smith for the purpose of defeating diversity jurisdiction. Consequently, Union Pacific files this Notice of Removal under both 28 U.S.C. §§ 1331 and 1332.

5.      Venue is proper as this Court is assigned to the district and division of the State Court Proceeding. *See* 28 U.S.C. § 98(c).

6.      Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders in the State Court Proceeding is attached hereto and incorporated herein by reference. *See* Exhibit 2. A copy of the state court's docket sheet is attached as Exhibit 3.

---

[1] Although neither Plymale nor Smith have been properly joined or served in this matter, both consent to this removal. 28 U.S.C. § 1446(b)(2)(A).

**DEFENDANT UNION PACIFIC'S NOTICE OF REMOVAL – Page 2**

7.     As required by 28 U.S.C. § 1446(d), a Notice to the State Court of Filing of Notice of Removal, together with a copy of this Notice of Removal, is being promptly filed in the District Court of Mayes County, Oklahoma and served on Graves. A true and correct copy of the "Notice to State Court of Filing Notice of Removal" (without exhibits), to be filed with the District Court of Mayes County, Oklahoma, is attached hereto as Exhibit 4.

## II.
## FEDERAL LAW PREEMPTION

8.     This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one that may be removed to this court by Union Pacific pursuant to provisions of 28 U.S.C. § 1441. Removal is appropriate because Graves' First Amended Petition raises claims that are preempted by federal law.

**A.     GRAVES' CLAIMS RELATED TO HIS TERMINATION ARE PREEMPTED BY THE RAILWAY LABOR ACT.**

9.     Specifically, the RLA preempts Graves' claims. Union Pacific is a rail carrier subject to the RLA, and Sheet Metal, Air, Rail, Transportation, Transportation Division, (also known as the "SMART-TD"), which is the successor to the United Transportation Union (also known as "UTU") is the labor organization that represented Graves. *See* Exhibit 5, Declaration of Katherine Novak, ¶ 4. Further, according to Graves' First Amended Petition, he is a collective bargaining unit employee and is represented by a union. *See, e.g.*, Exhibit 1, First Amended Petition, ¶ 12 (referring to being terminated and then reinstated through the "collective bargaining process"); *see also* Exhibit 1 to Graves' First Amended Petition, ¶ 31 (referring to Plaintiff's "Union Representative") and Exhibit 5, Declaration of Katherine Novak, ¶¶ 4-6Although the allegations in the First Amended Petition are confusing, Graves appears to allege that he was terminated by Union Pacific in August of 2018 but was later reinstated through the

"collective bargaining process." *See* Exhibit 1, First Amended Petition, ¶¶ 12, 19, and 25.[2]
Graves further alleges that, approximately one year later, Union Pacific terminated his
employment again before again reinstating him. *See id.* at ¶¶ 26-27.

10.     The RLA governs union-management relations in the railroad industry. Disputes
arising under the RLA are generally divided into two categories: major disputes and minor
disputes. Major disputes involve attempts to create new contractual rights, while minor disputes
involve the enforcement of existing rights arising under a CBA. *Consolidated Rail Corp. v.
Railway Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989) ("*Conrail*").  Minor disputes must
be resolved in binding arbitration before the national Railroad Adjustment Board ("NRAB") or
other arbitration boards established under § 3 of the RLA, 45 U.S.C. § 153.  *Conrail*, 491 U.S. at
303-04. In forming the NRAB, Congress "established an expert body to settle" railroad
grievances that "is peculiarly familiar with the thorny problems and the whole range of
grievances that constantly exist in the railroad world. Its membership is in daily contact with
workers and employers, and knows the industry's language, customs, and practices." *Gunther v.
San Diego & Ariz. E. Ry. Co.*, 382 U.S. 257, 261 (1965). Given the existence of this "expert
body," the RLA's arbitration procedures constitute the exclusive and mandatory resolution
mechanism for resolving all minor disputes. *Conrail*, 491 U.S. at 303-04.

11.     Minor disputes involve "the meaning of an existing [CBA] in a particular fact
situation," *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) (quotations and citation
omitted), so courts routinely rule that simple breaches of a CBA give rise to minor disputes.  *See,
e.g.*, *Railway Labor Executives' Ass'n v. Boston & Maine Corp.*, 808 F.2d 150, 159 (1st Cir.

---

[2] Plaintiff later clarifies in ¶ 25 of his Petition that his reinstatement happened before the
administrative hearing required by the parties' collective bargaining agreement, presumably as
part of settlement negotiations between Union Pacific and Graves' Union.

**DEFENDANT UNION PACIFIC'S NOTICE OF REMOVAL – Page 4**

1986) ("It would seem that *any* breach of an existing [CBA], whether 'anticipatory' or otherwise, is precisely what an arbitrable 'minor' dispute is concerned with.") (emphasis in original). Further, under *Conrail*, the parties' dispute over CBA interpretation or the "contractual right to take the contested action" creates a minor dispute unless Union Pacific's position is "frivolous or obviously insubstantial." 491 U.S. at 307.

12.     Graves' claims related to his termination involve a "minor" dispute under prevailing case law. *See, e.g.*, *Andrews v. Louisville & N.R. Co.*, 406 U.S. 320 (1972) (describing a state-law claim for wrongful discharge, seeking compensation and reinstatement, as a minor dispute subject to the RLA); *see also Bhd. of Maint. of Way Employees Div. v. Burlington Northern Santa Fe Ry. Co.*, 596 F.3d 1217, 1223 (10th Cir. 2010) ("[T]he default position for courts is to deem a dispute as minor if it even remotely touches on the terms of the relevant collective bargaining agreement. . . . Indeed, a party bears a relatively light burden in establishing exclusive jurisdiction in the Adjustment Board under the RLA.") (internal quotation marks and citations omitted).  As a minor dispute, Graves' claims are preempted.  *See Conrail* 491 U.S. at 304 ("The Board (as we shall refer to any adjustment board under the RLA) has exclusive jurisdiction over minor disputes."). Graves is attempting to frame his claims as being divorced from his CBA despite (1) acknowledging that he engaged in the grievance process under the CBA regarding his termination and (2) arguing that Plymale and Smith tortiously interfered with his "contractual relationship by virtue of his employment with UP" and "caused UP to breach the contract." *See Exhibit* 1, First Amended Petition, ¶¶ 30-31. He further seeks remedies that are governed exclusively by the CBA, including back pay. Because this is a fundamental case of a minor dispute regarding interpretation of a carrier's existing agreement with a union, this Court should find it is preempted.

**B.**     **GRAVES' *BURK* TORT IS ALSO PREEMPTED BY THE FRSA.**

13.     While Graves attempts to couch his *Burk* tort claim as a violation of Oklahoma public policy, a plain reading of the First Amended Petition reveals that he is basing essential elements of his claims on the resolution of federal law under the FRSA, 49 U.S.C.A. § 20109.

14.     In order to establish a *Burk* tort, a plaintiff must establish the following: (1) he was an at-will employee; (2) he was actually or constructively discharged; (3) in significant part due to a reason violating an Oklahoma public policy found in the state's constitutional, statutory, or decisional law, or in a federal constitutional provision setting forth norms of conduct for Oklahoma; and (4) no adequate statutory remedy exists to protect the Oklahoma public policy goal. *Vasek v. Bd. of County Comm'rs of Noble County*, 2008 OK 35, 186 P.3d 928; *see also Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24.

15.     Graves' *Burk* tort is wholly dependent on the finding of a public policy violation. Graves alleges he was retaliated against for reporting unsafe working conditions and protecting his colleagues from harm while on the job.  *See* Exhibit 1, First Amended Petition, ¶¶ 22-25.

16.     The FRSA explicitly provides protections for employees who report or refuse to participate in a hazardous safety or security condition.  *See* FRSA, 49 U.S.C.A. § 20109(b). A clear framework exists for a complainant to seek recovery under this statute: First, an FRSA complainant is provided 180 days to file a complaint with the Secretary of Labor; then, the Secretary of Labor is mandated to conduct an investigation to determine whether the complaint has reasonable merit; and, finally, the FRSA permits the complainant to "kick out" the complaint from the administrative process and file a federal court action after 210 days if no final decision has been rendered. *Id*.

17.     Graves cannot maintain his public policy claim under Oklahoma (*Burk* tort) law because there already exists an adequate statutory remedy—the FRSA. *See, e.g.*, *Shephard v. CompSource Okla.*, 209 P.3d 288, 292-93 (Okla. 2009) (holding that the existence of an adequate statutory remedy "precludes resort to a tort cause of action to redress a termination in violation of the public policy").

18.     The FRSA provides railroad employees, such as Graves, with an adequate remedy for claims of retaliation for making safety complaints and refusing to work in certain conditions. *See Debus v. Burlington N. & Santa Fe Ry. Co.*, 157 F. Supp. 3d 1034 (D. Kan. 2016) (FRSA provided railroad employee with adequate remedy for her claim that railroad retaliated against her for complaining about violations to Federal Railroad Administration, and thus employee was barred from asserting public policy retaliation claim against railroad under Kansas law, even though FRSA did not provide for jury trial); *see also Rayner v. Smirl*, 873 F.2d 60, 63 (4th Cir. 1989) (same). As such, Graves cannot bring a public policy retaliation claim against Union Pacific under the guise of a *Burk* tort.

## C.     SUPPLEMENTAL JURISDICTION EXTENDS TO ANY REMAINING STATE LAW CLAIMS.

19.     To the extent that any of Graves' causes of action may be considered separate and independent from those arising under federal law, they are also removable under 28 U.S.C. § 1441. This Court has jurisdiction over Graves' state law claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367(a) as they are so related to the federal claims as to form part of the same case or controversy under Article III of the U.S. Constitution. Thus, this action is removable in its entirety.

# IV.
# DIVERSITY JURISDICTION

20.     Diversity jurisdiction exists in a civil matter where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states. *Id.* at § 1332(a)(1). As addressed below, both of the requirements for diversity jurisdiction are met in this case.

## A.     DIVERSITY OF CITIZENSHIP EXISTS

21.     A district court is required to determine whether there is complete diversity only at the time the plaintiff brings a suit or when a defendant removes a matter to federal court. *See Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). Domicile is determined by looking at the citizenship at the time when suit was commenced. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015); *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1133 (10th Cir. 2014) ("the propriety of removal is judged on the complaint as it stands at the time of the removal") (citing *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991)); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998).

22.     Graves was a citizen of the State of Oklahoma at the time his Petition and this Notice of Removal were filed. *See* Exhibit 1, First Amended Petition, ¶ 5.

23.     For purposes of Section 1332, a corporation is deemed to be a citizen of any state by which it has been incorporated and of the state where its principal place of business is located. 28 U.S.C. §1332(c)(1). As clarified by the United States Supreme Court in *Hertz Corporation v. Friend*, 559 U.S. 77 (2010), "the phrase 'principal place of business' in § 1332(c)(1) refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's

activities, *i.e.*, its 'nerve center,' which will typically be found at its corporate headquarters." *Id*. at 80-81.

24.     Union Pacific is incorporated in the state of Utah. *See* Exhibit 5, Declaration of Tammy Potter, ¶ 6. Union Pacific's corporate headquarters, including its principal executive and administrative offices, are located in the State of Nebraska, which is where the majority of its corporate officers and senior executives and directors perform the company's executive and administrative functions. *Id*. at ¶¶ 6-10. Thus, Union Pacific's principal place of business is in Nebraska, and it is a citizen of Nebraska and Utah for diversity purposes.

25.     Plymale is a citizen of Oklahoma. *See* Exhibit 1, First Amended Petition, ¶ 4. As will be discussed below, there is no question that Plymale is no more than a "sham defendant" who was fraudulently joined for the purposes of avoiding diversity jurisdiction and, thus, removal of this action to federal court. Therefore, although Plymale is, and was at the time the lawsuit was filed, a citizen of Oklahoma, his citizenship must be disregarded for purposes of diversity jurisdiction because he was fraudulently joined.

26.     Smith is a citizen of Kansas. *See* Exhibit 1, First Amended Petition, ¶ 9. While Smith's inclusion in this lawsuit does not appear to be fraudulently joined for avoiding diversity jurisdiction, he has been improperly joined, and his citizenship must also be disregarded for purposes of diversity jurisdiction.

27.     Thus, Union Pacific is not a citizen of Oklahoma, and there is complete diversity between Graves and Union Pacific.

**B.     FRAUDULENT JOINDER**

**I.     Graves cannot maintain his state law claim asserted in his First Amended Petition against Smith or Plymale; therefore, Smith and Plymale must be considered to have been fraudulently joined for purposes of removal.**

28.     The Tenth Circuit has accepted the doctrine of fraudulent joinder. *See Dutcher*, 733 F.3d at 988. The Tenth Circuit has directed district courts to "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available" when a defendant alleges fraudulent joinder. *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, 203 Fed. App'x 911, 913 (10th Cir. 2006); *see also Long v. Halliday*, 768 Fed. App'x 811, 814 (10th Cir. 2019); *Ferrell v. BGF Global, LLC*, No. 15-404, 2015 WL 6438988, at *2 (W.D. Okla. Oct. 21, 2015). The facts pled in Graves' First Amended Petition do not come close to alleging any basis for liability against Plymale and Smith.

29.     Fraudulent joinder is a jurisdictional inquiry. *See Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1247 (10th Cir. 2004); *see also Ferrell*, 2015 WL 6438988, at *2 ("[A] defendant may remove a case based upon diversity jurisdiction—even in the absence of complete diversity—if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction."). Upon a finding of fraudulent joinder, the citizenship of the party that has been improperly joined in the lawsuit is to be disregarded. *See American Nat'l Bank & Trust Co. of Sapulpa, v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of Fraudulent Joinder.").

30.     To prevail on an argument of fraudulent joinder, the moving party must demonstrate "there is *no possibility* that the plaintiff would be able to establish a cause of action against the nondiverse party." *Ferrell*, 2015 WL 6438988, at *2 (emphasis in original) (citations omitted).

## II.    Graves' "malicious interference with contract" claim against Smith and Plymale fails as a matter of law.

31.    Graves has set forth a single claim against Plymale (the nondiverse Defendant) and Smith in their *individual* capacities: malicious interference with contractual relationship. However, the pled allegations relate solely to Plymale's and Smith's actions as supervisory figures at, and agents of, Union Pacific.[3] *See* Exhibit 1, First Amended Petition, ¶¶ 2, 9, 19-23, 31. Because Graves has no possibility of prevailing on either claim against Plymale (or Smith), the Court should dismiss his claims against Plymale (and Smith) and consider only Union Pacific's citizenship for purposes of diversity jurisdiction. *See Ferrell*, 2015 WL 6438988, at *4 n.5 ("If a defendant is fraudulently joined and is disregarded as a party . . . he must be dismissed without prejudice.").

32.    To establish his malicious interference with contract claim, Graves must allege facts sufficient to show (1) he had a business or contractual right with which there was interference; (2) Plymale and/or Smith knew of the relationship; (3) Plymale and/or Smith maliciously or intentionally interfered with or caused a breach or termination of the relationship; (4) that Plymale and/or Smith's alleged interference was neither justified, privileged, nor excusable; and (5) that damages resulted from Plymale and/or Smith's interference. *See Wilspec Techs., Inc. v. DunAn Holding Grp. Co.*, 2009 OK 12, ¶ 1, 204 P.3d 69, 74. Further, the *Restatement (Second) of Torts* requires Graves to affirmatively prove Plymale and/or Smith's

---

[3] Graves' petition asserts an additional claim of public policy discharge and retaliation.  The caption for this claim indicates that it is only being asserted against Union Pacific and, therefore, Union Pacific does not discuss it herein.  However, assuming Graves seeks to assert the claim against Plymale and Smith, it would not impact the Court's analysis.  Graves' public policy and retaliation claim is based on the alleged unlawful retaliation Graves claims he suffered from Union Pacific.  *See* Exhibit 1, First Amended Petition, ¶¶ 32-37.

conduct was improper, *i.e.*, not justified, privileged, or excusable. *See Restatement (Second) of Torts* § 766 (1979).[4]

33.     However, a malicious interference with contract claim cannot be made against a party to the contract—**or the agents or representatives acting on the party's behalf**. *See Ray v. American Nat'l Bank & Trust Co. of Sapulpa*, 1994 OK 100, 894 P.2d 1056, 1060 (a party cannot "wrongfully interfere with a contract concerning which it was acting in a representative capacity for a party," and "[a] cause of action for wrongful interference with contract can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms"); *Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, ¶ 18, 911 P.2d 1205, 1210 (same).

34.     To the extent Plymale and Smith allegedly tortiously interfered with Graves' rights under the CBA, any actions of Plymale and/or Smith related to Graves' employment were made on behalf of Union Pacific. Accordingly, Graves **cannot** make a viable claim of malicious interference with contract against Plymale or Smith, as they were acting on behalf of Union Pacific.

35.     Additionally, any alleged "interference" by Plymale and/or Smith was justified, as their actions were intended to protect the safety of the public and other Union Pacific employees.

36.     As such, Graves has failed to state a valid malicious interference claim against Smith and/or Plymale.

---

[4] Oklahoma has adopted the *Restatement (Second) of Torts* position on this issue and requires the plaintiff to bear the burden of proof to show a defendant's improper conduct as an element of an interference claim. *See Wilspec*, 2009 OK 12, ¶ 1, 204 P.3d at 70, 74 (listing "the interference was neither justified, privileged nor excusable" as an element of a plaintiff's *prima facie* case for tortious interference).

**III.     Graves' *Burk* Tort (Discharge in Violation of Oklahoma Public Policy) was not asserted against Smith or Plymale, and even if it had been, it would still fail as a matter of law.**

37.     Graves' *Burk* tort was only asserted against Union Pacific and not against Smith or Plymale. Even if such a claim were asserted against either individual defendant, it would fail as a matter of law.

38.     Oklahoma's *Burk* tort does not provide for recovery against individuals—only employers are liable. *See Hall v. YMCA of Greater Tulsa*, No. 09-CV-630-JHP-FHM, 2010 WL 2196554, at *3 (N.D. Okla. May 26, 2010). Accordingly, Graves cannot assert a valid *Burk* tort against the individual defendants.

39.     Thus, even though Plymale is a citizen of Oklahoma, Graves cannot defeat complete diversity through fraudulent joinder because he cannot establish a viable cause of action against Plymale. Similarly, Graves cannot establish a viable cause of action against Smith.

**C.     AMOUNT IN CONTROVERSY**

40.     Diversity jurisdiction under 28 U.S.C. § 1332(a) also requires the amount in controversy, exclusive of interest and costs, be in excess of $75,000.

41.     On its face, Graves' First Amended Petition seeks actual damages in excess of $10,000 and punitive damages in excess of $10,000. *See* Exhibit 1, First Amended Complaint, Section V. Regardless, the amount in controversy is determined not by looking at how much a plaintiff says he will recover or is *likely* to recover, but by considering the amount his allegations suggest he *might* lawfully recover. *See Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 911-12 (10th Cir. 2016).

42.     In order to show the amount in controversy exceeds $75,000, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy

exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 94 (2014). This language "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.* at 87. Thus, courts should apply "the same liberal rules [to removal allegations] that are applied to other matters of pleading," and the notice of removal "need not contain evidentiary submissions." *Id.* at 84. As the Supreme Court has explained, "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. at 89.

43.     Graves' First Amended Petition alleges that Union Pacific illegally terminated his employment in violation of Oklahoma public policy in retaliation for Graves' filing a prior suit against Union Pacific and "his reporting of unsafe working conditions." *See* Exhibit 1, First Amended Petition, ¶ 22. Graves further alleges he was reinstated and claims Union Pacific did not provide him back pay and placed him on probation. *Id.* at 29.

44.     As a result of Union Pacific's allegedly wrongful conduct, Graves claims he has suffered significant damages including the loss of his employment and income. Specifically, Graves seeks front pay, back pay, reinstatement, injunctive relief, and punitive damages.[5] Graves may possibly recover each category of damages he is seeking under the claims he has asserted in his First Amended Petition, and each of these categories must be considered and included for the purposes of calculating the amount in controversy. *See Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003).

45.     Union Pacific's records establish that Graves during Graves' last full year of employment, Graves earned $69,584.96 – an average of $1,338.17 weekly. *See* Exhibit 6,

---

[5] Although Graves requests "reinstatement," we note for clarity that he was reinstated by Union Pacific and is currently employed by same.  Based on the wording of ¶ 29 of his First Amended Complaint, found at Exhibit 1, his request for reinstatement may relate to his allegation that he was reinstated but placed on probation, with such probation being noted in his personnel file.

**DEFENDANT UNION PACIFIC'S NOTICE OF REMOVAL – Page 14**

Declaration of Tammy Potter, ¶ 4Union Pacific contributes to his health and welfare benefits at a rate of approximately $1,795.97 per month. *See id.* at ¶ 5. Graves period of unemployment was from May 3, 2019 to July 16, 2019, making his claim for back wages and benefits *alone* approximately $17,000.

46.     The amount in controversy in this case exceeds $75,000 because the allegations in Graves' First Amended Petition reflect that—accounting for front pay, back pay, reinstatement, injunctive relief, punitive damages and attorneys' fees—he could potentially recover much more than that amount. *See McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (defendant must only demonstrate jurisdictional facts that make it "possible" that the amount in controversy is satisfied). Accordingly, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

47.     Union Pacific properly removed this action to this Court under 28 U.S.C. §§ 1441 and 1446 because it is pending in Mayes County, Oklahoma, which lies within this District.

48.     A Notice of Removal to Federal Court, a copy of which is attached as Exhibit 4, is being simultaneously filed in state court and served on Graves along with this Notice in accordance with 28 U.S.C. §1446(d).

WHEREFORE, Union Pacific effects removal of this action from the District Court of Mayes County, Oklahoma, to the United States District Court for the Northern District of Oklahoma.

**DEFENDANT UNION PACIFIC'S NOTICE OF REMOVAL – Page 15**

Respectfully submitted,

*/s/ Jonathan G. Rector*
Jonathan G. Rector
OBA No. 30691
jrector@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201.2931
214.880.8100
214.880.0181 (Fax)

Jessica Craft, OBA #31126
LITTLER MENDELSON, P.C.
1301 McKinley Street, Suite 1900
Houston, TX 77010-3031
Telephone: 713.951.9400
Fax: 713.951.9212
jcraft@littler.com

ATTORNEYS FOR DEFENDANT UNION
PACIFIC RAILROAD COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of February, 2021, a true and correct copy of the foregoing document was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following:

Brendan M. McHugh
P.O. Box 1392
Claremore, OK 74018
Email: Brendan@lawinok.com

Dana Jim
P.O. Box 1011
Vinita, Oklahoma 74301
Email: danajimlaw@gmail.com

*/s/Jonathan G. Rector*
Jonathan G. Rector

4817-8627-5010.3 101210.1011

**DEFENDANT UNION PACIFIC'S NOTICE OF REMOVAL – Page 16**